**In re AGENCY FOR DEPOSIT INSURANCE, REHABILITATION, BANKRUPTCY AND LIQUIDATION OF BANKS, as Bankruptcy Administrator of Jugobanka A.D., Beograd and Beogradska Banka A.D., Beograd, Petitioner–Appellant,**

v.

**SUPERINTENDENT OF BANKS OF the STATE OF NEW YORK, Respondent–Appellee.**

Nos. 03 Civ. 9320(JSR), 03 Civ. 9321(JSR).

United States District Court, S.D. New York.

Aug. 13, 2004.

Christopher J. Major, Stephen H. Gross, Thomas J. Donlon, Robinson & Cole, L.L.P., New York, NY, Houston Putnam Lowry, Brown & Welsh, P.C., Meriden, CT, for Petitioner–Appellant.

William J. Snipes, Sullivan & Cromwell, Shari Debra Leventhal, Federal Reserve Bank of New York, Neal Fellenbaum, Zegen & Fellenbaum, Andrew Damian O'Toole, U.S. Attorney's Office, James P. Greenhalgh, New York, NY, for Appellee.

Carolyn Schwartz, The Office of the United States Trustee, New York, NY, for Trustee.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Section 304 of the Bankruptcy Code, designed to coordinate foreign and domestic bankruptcy proceedings, gives an authorized representative of a foreign bankrupt estate standing to seek broad relief from a United States Bankruptcy Court. In this case, the foreign bankruptcy administrator of two failed Yugoslavian banks (the "Agency") seeks, pursuant to § 304, to prevent the Superintendent of Banks of the State of New York (the "Superintendent"), in its capacity as liquidator of the failed banks' New York branches,

from giving special preference to New York creditors. Initially, the Bankruptcy Court erroneously concluded that the Agency lacked standing because another provision of the Bankruptcy Code, § 109, excluded foreign banks from qualifying as "debtors" under a different chapter of the Bankruptcy Code. On appeal, however, this Court, finding § 109 irrelevant to the analysis of who was qualified to invoke § 304, reversed, and remanded the case to the Bankruptcy Court for further proceedings under § 304. *See* Opinion and Order dated June 8, 2004 (the "June 8 Order").

The Superintendent now moves for reconsideration of the June 8 Order or, alternatively, certification of that Order for immediate appeal. Regarding reconsideration, the gist of the Superintendent's position is that "[i]t appears from the absence of any discussion of the federal preemption or sovereign immunity doctrines in the Court's [June 8] opinion that the Court may have overlooked threshold questions going to the authority by which a sovereign state is (1) required to appear in federal bankruptcy court and (2) denied its right under a mandatory state statute to liquidate two state-licensed bank agencies." Memorandum In Support of the Superintendent's Motion for Reconsideration Or, In the Alternative, Certification for Immediate Appeal at 1.

Regretfully for the Superintendent, the Court did not overlook these issues: it simply found them so lacking in merit as not to warrant discussion in the June 8 Order. However, given the motion for reconsideration, as well as the Court's respect for the Superintendent's very able counsel, the Court will briefly set forth here why, in the Court's view, neither the "sovereign immunity" argument nor the "preemption" argument has any merit.

The fourth clause of Article I, section 8, of the Constitution gives Congress plenary power "[t]o establish uniform laws on the subject of bankruptcies throughout the United States." Congress has exercised this power to the fullest, effectively occupying the field. *See, e.g., Eastern Equip. & Servs. Corp. v. Factory Point Nat'l Bank,* 236 F.3d 117, 121 (2d Cir.2001) ("Congress created a lengthy, complex and detailed Bankruptcy Code to achieve uniformity"); *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910, 915 (9th Cir.1996) ("the unique, historical, and even constitutional need for uniformity in the administration of the bankruptcy laws is another indication that Congress wished to leave the regulation of parties before the bankruptcy court in the hands of the federal courts alone"); *Astor Holdings, Inc. v. Roski,* 325 F.Supp.2d 251, 262 (S.D.N.Y. 2003) (noting the "broad scope of bankruptcy preemption"). Moreover, § 304, in addition to being part of the Bankruptcy Code, also reflects Congress's power "[t]o regulate Commerce with foreign nations and among the several States" (Art. I, § 8, cl.3), for its avowed purpose is to bring order out of chaos that otherwise arises when foreign-based companies or individuals with property in the United States succumb to bankruptcy abroad. In such a situation, § 304 gives the Bankruptcy Courts broad injunctive powers to assure, *inter alia,* "just treatment of all holders of claims against or interests in [the] estate [represented by the foreign representative]," § 304(c)(2), and to "order turnover of the property of such estate, or the proceeds of such property, to such foreign representative," § 304(b)(2).

■ By virtue of Article VI, section 2 of the Constitution, the "the Laws of the United States ... shall be the supreme Law of the Land...." While the states may be immune from federal lawsuits by virtue of the Eleventh Amendment, it is axiomatic that this does not preclude a

federal court from issuing injunctive relief against a state official (such as the Superintendent) in order to end a continuing violation of federal law. *Ex parte Young,* 209 U.S. 123, 156, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Seminole Tribe v. Florida,* 517 U.S. 44, 73 n. 16, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Otherwise, the supremacy of federal law would quickly be rendered a nullity.

■ Here, what the Agency seeks is to have the Bankruptcy Court exercise its broad injunctive powers under § 304 to prevent the Superintendent, in her role as liquidator, from interfering with the restraint and possible transfer under § 304 of property of the failed banks' branches in which, as the Superintendent herself concedes, the Superintendent has no property interest. *See* Superintendent's Reply Memorandum In Support of Reconsideration Or, In the Alternative, Certification for Immediate Appeal at 6. *See also* N.Y. Banking Law § 606. Assuming that § 304 extends to such property, the power to enforce its transfer under federal bankruptcy law against a state superintendent intent on thwarting such transfer is a elementary exercise of federal supremacy and, under the doctrine of *Ex Parte Young,* involves no violation of the Eleventh Amendment. Similarly, as to the supposed "preemption," if it is the intent of Congress to embrace foreign banks having U.S. branches within the scope of § 304, the fact that this may interfere with a "mandatory state statute" is well within Congress's constitutional prerogatives.

■ In short, the Superintendent's arguments about sovereign immunity and preemption are entirely irrelevant: for no state official and no state law can stand in the way of the enforcement of § 304 of the Bankruptcy Code. The only question, then, is whether § 304 extends standing to representatives of the estate of foreign bankrupt banks having property in the United States—the question this Court answered in the affirmative in its June 8 Order. Because, moreover, that question was, in this Court's view, readily dictated by the plain language of the statute (—the June 8 Order itself was only 5 double-spaced pages—), the fall-back position in the instant motion of the Superintendent and her putative *amici*[1] requesting certification must be denied, since, in the Court's view, there are no substantial grounds for differing opinions. *See* 28 U.S.C. § 1292(b).

Accordingly, the Superintendent's motion is denied in all respects.

SO ORDERED.

---

1. While the letter submissions of the proposed *amici* simply reiterate arguments already put forth by the Superintendent and/or by the previously-admitted *amicus,* the Federal Reserve Bank of New York, and previously rejected by the Court, the Court will grant the motion of the Conference of State Bank Supervisors to file letters on behalf of the state departments of banking of Connecticut, Georgia and Texas, the California Department of Financial Institutions, the Florida Office of Financial Regulation, and the Illinois Department of Financial and Professional Regulation, Division of Banks and Real Estate. Their real complaint, in the Court's view, is with Congress's unwillingness to limit § 304 in such a way as to allow state banking regulators to continue to funnel the assets of failed U.S. branches of foreign banks to domestic creditors in preference to foreign creditors. Whether or not Congress's unwillingness to so limit § 304 reflects Congress's realization that to do so would undercut the purpose of § 304 to achieve fairness among creditors on an international scale, or whether, as *amici* suggest, the absence of such a limitation in § 304 simply reflects an oversight on Congress's part, it is not for this Court to re-write what Congress has written.